WO                                                                                                          JL

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bruce J. Dent, Jr., | No. CV 20-00201-PHX-MTL (DMF) |
| Plaintiff, | |
| v. | **ORDER** |
| Corizon Incorporated, et al., | |
| Defendants. | |

On January 27, 2020, Plaintiff Bruce J. Dent, Jr., who is confined in the Arizona State Prison Complex-Yuma, filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983 and an Application to Proceed In Forma Pauperis. In a January 29, 2020 Order, the Court granted the Application to Proceed and dismissed the Complaint because Plaintiff had failed to state a claim. The Court gave Plaintiff 30 days to file an amended complaint that cured the deficiencies identified in the Order.

After requesting and receiving two extensions of time, on March 23, 2020, Plaintiff filed a First Amended Complaint (Doc. 12). The Court will order Defendant Delgado to answer Count One of the First Amended Complaint and will dismiss the remaining claims and Defendants without prejudice.

**I.      Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28

TERMPSREF

U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a pro se prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

## II. First Amended Complaint

In his four-count First Amended Complaint, Plaintiff sues Assistant Facility Health Administrator Michael Delgado and Nurse Practitioners Dorothy Igwe, Marianne Powell,

and Joanna Burns. Plaintiff asserts claims of constitutionally inadequate medical care. He seeks monetary, declaratory, and injunctive relief.

In **Count One**, Plaintiff alleges that he sustained a work-related injury on February 5, 2018. On February 17, 2018, Plaintiff submitted a Health Needs Request (HNR) for an emergency MRI or CT scan because the ligaments and tendons in his hand were torn. The response to the HNR states that Plaintiff was seen on the nurse's line and referred to the provider. On March 13, 2018, Plaintiff submitted an HNR to the Facility Health Administrator (FHA), in which he "made them aware" of his injury and requested an MRI or CT scan, because "inadequate care [was] being administered to [him]." Plaintiff told "them" he needed surgery. The response to the HNR stated that his consultation was being reviewed.

On March 27, 2018, Plaintiff submitted an Informal Complaint Resolution, complaining of pain and inadequate treatment and requesting to see a specialist. On April 13, 2018, Plaintiff was sent to physical therapy and was "forced to endure excruciating pain." The physical therapist advised him that the pain was "due to inactive use for such a long period of time." The physical therapist "had no knowledge as to the extent" of Plaintiff's injury. The physical therapy consisted of Plaintiff gripping and twisting a rubber net, grinding rice in a bowl, stretching and forcing his fingers open, pedaling a bicycle, and other "unmemorable exercises." During the session, Plaintiff made the therapist aware of a "snap" in his hand during one of the exercises.

On April 19, 2018, Plaintiff submitted an HNR to the FHA, inquiring whether reconstructive surgery had been requested. The response to the HNR stated that Plaintiff was seen on the nurse's line and referred to the provider. The same day, Plaintiff was given "hand and finger exercises papers" by an unknown provider. On April 23, 2018, J. Todd responded to the Informal Complaint and stated that Plaintiff's specialist appointment was approved and had been scheduled. On April 25, 2018, Plaintiff submitted a second Informal Complaint, complaining that he was not receiving proper care and inquiring why

he was sent out to physical therapy without "them" knowing the nature of his injury. Plaintiff did not receive a response to the Informal Complaint.

On May 4, 2018, Plaintiff submitted an HNR to the medical department, stating that he was in pain and that physical therapy had made his hand worse. Plaintiff wrote that "something shifted" in his hand, causing unbearable pain. He also "mentioned" ligament and tendon damage and asked why he was not receiving the help he desperately needed. The response to the HNR stated that Plaintiff was seen on the nurse's line and referred to the provider for evaluation. The same day, Plaintiff submitted an HNR to the medical department, asking whether it was safe for him to take "so much ibuprofen and aspirin" and asking what "actions were taking place" to prevent him from further harm. Plaintiff stated that he would "like it to go on record." The response to the HNR stated that Plaintiff was seen on the nurse's line and referred to the provider for follow-up.

On May 17, 2018, Plaintiff submitted an Inmate Grievance stating that the contracted healthcare provider for Arizona Department of Corrections (ADC) prisoners, Corizon, was being deliberately indifferent to Plaintiff's serious injury. On May 30, 2018, Plaintiff submitted an HNR to the mental health department, requesting anger management treatment. The response to the HNR stated that Plaintiff was referred to mental health. On June 25, 2018, Plaintiff sent a letter to the Prison Law Office, seeking help.

On July 3, 2018, Plaintiff submitted an HNR to the FHA, complaining that he was suffering unnecessary pain and was being deliberately disregarded. The response to the HNR stated that the consultation was approved and was in scheduling. During the week of July 13, 2018, Plaintiff received a letter from Tania Amarillas of the Prison Law Office, which stated that "they" had reviewed Plaintiff's medical records and advised him to contact them if he was not "sent out on a specific date." On July 17, 2018, Defendant Delgado responded to Plaintiff's Inmate Grievance, stating investigation into Plaintiff's "issue" included a review of his medical records, and the records indicated that he had been seen by a physical therapist on April 13, 2018. Delgado stated that the documentation in

Plaintiff's chart indicated he was to continue onsite therapy, and that necessity for ongoing physical therapy visits was not demonstrated.

On October 15, 2018, Plaintiff underwent an MRI of his hand. The MRI showed significant damage, that is, a longitudinal split of the radial collateral ligament of the third metacarpophalangeal (MCP) joint, third MCP joint effusion, radial and ulnar collateral ligament thickening and tears of the second and fourth MCPs, and volar subluxation of the second proximal phalanx relative to the metacarpal. Plaintiff has a permanent saddle deformity as a result of not getting adequate care in a timely manner, and he is now suffering post-surgical arthritis.

Plaintiff alleges that Defendant Delgado violated Plaintiff's Eighth Amendment rights by allowing him to "go through so much unnecessary pain and suffering." Plaintiff asserts that Delgado was aware of his serious injury because Delgado stated in response to Plaintiff's Inmate Grievance that he had reviewed Plaintiff's medical records and "made no effort to rectify [his] chronic injury."

In **Count Two**, Plaintiff alleges that on April 19, 2018, he explained to Defendant Igwe "all of the hardships" Plaintiff had been "dealing with" regarding inadequate healthcare. Plaintiff had recently been sent out to physical therapy, and he expressed to Igwe his frustrations. Igwe told him that he must continue with physical therapy, and he would not be "administered to" until he completed 16 weeks of physical therapy. Igwe stated that "then and only then" would a consultation with a hand specialist be recommended.

On April 25, 2018, Plaintiff submitted an Inmate Informal Complaint Resolution regarding Igwe's "statement" and the "complete disregard" that was shown toward him and his chronic injury. Igwe was Plaintiff's primary provider at that time, and she failed to appeal the physical therapy decision, which caused him to suffer unnecessary pain through the entire 16-week period and beyond. Igwe reviewed Plaintiff's medical records and was "fully aware" that Plaintiff needed an MRI because his hand was still swollen two months after his injury. Plaintiff "obeyed" Igwe's directives and continued self-physical

therapy until completion, "all the while" damaging his hand further without being aware of doing so.

In **Count Three**, Plaintiff alleges that Defendant Powell was his primary care provider for "a period of time" and allowed him to endure unnecessary pain and suffering. Powell "did what she could" for Plaintiff at the time, but her "overall care was inadequate" because it left him "permanently mangled." Plaintiff requested an MRI via several HNRs, including on February 17, 2018, when he requested an emergency HNR for an MRI or CT scan. On March 13, 2018, Plaintiff submitted an HNR to the FHA, requesting an MRI or CT scan. On April 19, 2018, Plaintiff submitted an HNR to the FHA, requesting reconstructive surgery. On May 4, 2018, Plaintiff submitted an HNR to the medical department, complaining of pain and that physical therapy was making his hand worse. On May 30, 2018, Plaintiff submitted an HNR stating that he was enduring "pain and complications." All the names on the responses Plaintiff received were illegible or were only initialed and stated that Plaintiff would be referred to the provider.

Plaintiff alleges that Defendant Powell was aware that Plaintiff needed and MRI, but it was delayed so long that Plaintiff sustained permanent damage.

In **Count Four**, Plaintiff alleges that Defendant Burns was his primary care provider "for a period of time during the many stages" of his chronic injury. Defendant Burns "did what she could" to treat his injury, but it was inadequate "for the simple fact that her treatment caused" a saddle deformity. Burns could not provide Plaintiff with adequate treatment because she was told by a Utilization Management doctor that "these types of injuries tend to heal themselves." It was because of Utilization Management's "denial" that Defendant Burns could not "get [Plaintiff] an MRI," but it was her responsibility to give Plaintiff adequate treatment. Plaintiff submitted an Inmate Letter to Defendant Burns, thanking her for the care she provided, although he did not get the chronic care that he desperately needed.

Plaintiff's chronic injury healed incorrectly because it was neglected for so long. Plaintiff sustained the injury on February 5, 2018 but did not undergo an MRI until October

15, 2018, and he did not undergo reconstructive surgery until April 15, 2019. As a result, Plaintiff is permanently damaged, has a saddle deformity, and is suffering post-surgical arthritis.

### III. Failure to State a Claim

To prevail in a § 1983 claim, a plaintiff must show that (1) acts by the defendants (2) under color of state law (3) deprived him of federal rights, privileges or immunities and (4) caused him damage. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994)). In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

Not every claim by a prisoner relating to inadequate medical treatment states a violation of the Eighth Amendment. To state a § 1983 medical claim, a plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. *Jett*, 439 F.3d at 1096. Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the way prison doctors respond to the prisoner's medical needs. *Estelle v. Gamble*, 429 U.S.

97, 104-05 (1976); *Jett*, 439 F.3d at 1096.

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Farmer*, 511 U.S. at 835. "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. California Dep't of Corr.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

Although pro se pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action. *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. *Id*.

### A. Defendant Igwe

Plaintiff alleges Defendant Igwe told him that he must complete 16 weeks of physical therapy before a specialist consultation would be recommended. Plaintiff further claims that Igwe failed to appeal the physical therapy decision. However, Plaintiff does not allege that Igwe made the decision to send Plaintiff for physical therapy rather than for a specialist consultation. Plaintiff also does not allege any facts to support a conclusion that Igwe had any authority to appeal the decision to send Plaintiff to physical therapy. As presented, Plaintiff has not stated an Eighth Amendment deliberate indifference claim against Igwe. The Court will therefore dismiss Defendant Igwe and Count Two.

….

### B. Defendant Powell

In Count Three, Plaintiff alleges Defendant Powell was aware that Plaintiff needed and MRI, but it was delayed so long that Plaintiff sustained permanent damage. Plaintiff's allegations against Powell are too vague and conclusory to state a claim. Plaintiff claims Powell's overall treatment was inadequate because the MRI was delayed, but he does not allege any facts to support a conclusion that Powell was involved in any decisions concerning Plaintiff's requests for an MRI. Plaintiff provides no factual detail concerning the treatment Powell provided; he states only that she "did what she could." Plaintiff has not stated an Eighth Amendment deliberate indifference claim against Powell. Accordingly, the Court will dismiss Defendant Powell and Count Three.

### C. Defendant Burns

Plaintiff alleges that although Defendant Burns "did what she could," she could not provide Plaintiff adequate treatment because Utilization Management told her that hand injuries like Plaintiff's tended to heal themselves. Plaintiff alleges no facts concerning Burns's treatment, let alone that her treatment was deliberately indifferent. Plaintiff has not alleged facts to support a conclusion that Burns had any authority to overrule or disregard Utilization Management's decisions. Thus, Plaintiff fails to state an Eighth Amendment deliberate indifference claim against Defendant Burns, and this Defendant will be dismissed, as will Count Four.

## IV. Claims for Which an Answer Will be Required

Plaintiff alleges Defendant Delgado denied his Inmate Grievance, despite being aware of Plaintiff's serious medical needs. Liberally construed, Plaintiff has stated an Eighth Amendment deliberate indifference claim in Count One against Defendant Delgado in his individual capacity. The Court will require Defendant Delgado to answer Count One.

## V. Warnings

### A. Release

If Plaintiff is released while this case remains pending, and the filing fee has not

been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court that he intends to pay the unpaid balance of his filing fee within 120 days of his release or (2) file a <u>non</u>-prisoner application to proceed in forma pauperis. Failure to comply may result in dismissal of this action.

**B.     Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

**C.     Copies**

Plaintiff must serve Defendant, or counsel if an appearance has been entered, a copy of every document that he files. Fed. R. Civ. P. 5(a). Each filing must include a certificate stating that a copy of the filing was served. Fed. R. Civ. P. 5(d). Also, Plaintiff must submit an additional copy of every filing for use by the Court. *See* LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

**D.     Possible Dismissal**

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)     Counts Two, Three, and Four are **dismissed** without prejudice.

(2)     Defendants Igwe, Powell, and Burns are **dismissed** without prejudice.

(3)     Defendant Delgado must answer Count One.

(4)     The Clerk of Court must send Plaintiff a service packet including the First Amended Complaint (Doc. 12), this Order, and both summons and request for waiver forms for Defendant Delgado.

(5)     Plaintiff must complete and return the service packet to the Clerk of Court

1 within 21 days of the date of filing of this Order.  The United States Marshal will not
2 provide service of process if Plaintiff fails to comply with this Order.

3 (6) If Plaintiff does not either obtain a waiver of service of the summons or
4 complete service of the Summons and First Amended Complaint on Defendant within 90
5 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever
6 is later, the action may be dismissed. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

7 (7) The United States Marshal must retain the Summons, a copy of the First
8 Amended Complaint, and a copy of this Order for future use.

9 (8) The United States Marshal must notify Defendant of the commencement of
10 this action and request waiver of service of the summons pursuant to Rule 4(d) of the
11 Federal Rules of Civil Procedure. The notice to Defendant must include a copy of this
12 Order.

13 (9) If Defendant Delgado agrees to waive service of the Summons and First
14 Amended Complaint, Defendant must return the signed waiver forms to the United States
15 Marshal, not the Plaintiff, **within 30 days of the date of the notice and request for waiver**
16 **of service** pursuant to Federal Rule of Civil Procedure 4(d)(1)(F) to avoid being charged
17 the cost of personal service.

18 (10) The Marshal must immediately file signed waivers of service of the
19 summons. If a waiver of service of summons is returned as undeliverable or is not returned
20 by Defendant within 30 days from the date the request for waiver was sent by the Marshal,
21 the Marshal must:

22 (a) personally serve copies of the Summons, First Amended Complaint,
23 and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil
24 Procedure; and

25 (b) within 10 days after personal service is effected, file the return of
26 service for Defendant, along with evidence of the attempt to secure a waiver of
27 service of the summons and of the costs subsequently incurred in effecting service
28 upon Defendant. The costs of service must be enumerated on the return of service

form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, First Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(11) Defendant Delgado must answer Count One of the First Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(12) This matter is referred to Magistrate Judge Deborah M. Fine pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 30th day of March, 2020.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge